JONES, JUDGE:
On July 18, 1987, the claimant, Herbert J. Dubisse, of Philadelphia, Pennsylvania, along with his family, was a guest at the Lodge at Cacapon State Park in Morgan County. He had rented the accommodations for one week and this was the second day of his vacation. He went to the swimming area in the Park’s 6-acre lake, climbed upon one of the three diving boards, and as he walked to the end of the board he slipped, lost his balance, the board struck the heel of his left foot, and he fell into the water. The claimant did not immediately *22 realize the extent of his injury, but the pain was severe and on the following morning he went to Berkeley Springs where
a physician advised that he had sustained a torn Achilles tendon. The claimant did not go back to Cacapon but returned to Philadelphia where he later underwent surgery and as a result of the accident he lost substantial time from his job as a City Fireman and incurred considerable hospital and medical expense. The claimant prays damages in the sum of $9,000.00, including questionable permanent disability.
The substance of the claimant’s case, or lack of it, is shown by excerpts from his direct testimony, as follows:
“Q Would you please tell us what happened when you arrived there?
A I went to the lake and I went out on the diving board. I got near the end of the diving board and took a few steps to bounce before I dove and my foot slipped. In order to gain my balance. I brought my left foot back and the board had hit me and I went into the water.
$ $ $ $
“Q Now, as you walked out onto the board, what appearance, if 'any, did you notice about it?
A It was just a diving board.
Q Did you have traction as you walked out?
A Yes, I did.
Q Before you took your spring, had you had any difficulty walking as far as slipperiness was concerned?
A No, I did not.
Q So at what part of the board did you experience the slipperiness?
A At the part where I slipped. I don’t know of any slipperiness that I felt actually. I just took a step and when I took the step, the foot seemed to slip out from under me so that I lost my balance.
*23 Q So as you walked out on the board, did you notice anything which would cause you to become alarmed or to care for your safety until you slipped?
A No, the diving board was no different from any other.”
The claimant testified that he never examined the diving board after the accident, nor did 'anyone for him. He did not report the accident to anyone at the Park.
The Superintendent at Cacapon State Park, with ten years’ employment at that location, testified that there were at least two lifeguards on duty at the time of the accident, that no complaint or report was made to either of them or to anyone else at the Park, and that his first knowledge of the occurrence was about a year later. He further testified that the diving boards are taken down at the end of each season on Labor Day, and, before the beginning of the following season on Memorial Day, they are refinished and resurfaced with a “battleship safety tread”, consisting of a primer and then a second coat of paint containing a gritty material, to give the surface of the board a rough finish. The Superintendent further gave evidence that it is possible for the boards to become worn and slippery but that with one exception, in 1968, the reconditioning process was never required before the end of a season. He testified that the boards are regularly inspected at least once every ten days; and that there were no complaints of a slick board at any time during the year 1967.
The Court does not question the injury to the claimant but we are of opinion that he has failed to make a case against the Department of Natural Resources. The evidence shows only an unfortunate accident, without the proof of any negligence or fault on the part of the Department. Accordingly, this claim is disallowed.